UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

      Plaintiff,

                                      Case No. 24-cr-20493

v                                       Hon. Matthew F. Leitman

TYLER SCOTT MINEGAR,

      Defendant.

_____/

| | |
|---|---|
| SEAN L. KING | GABI D. SILVER (P36382) |
| Assistant United States Attorney | Attorney for Defendant |
| 211 W. Fort Street | 1300 Broadway, Suite 500 |
| Suite 2001 | Detroit, MI 48226 |
| Detroit, MI 48226 | (313) 963-0210 |

**DEFENDANT'S SENTENCING MEMORANDUM**

## I.    INTRODUCTION

Defendant, TYLER SCOTT MINEGAR, by and through his counsel, GABI D. SILVER, submits this memorandum regarding his sentencing. Mr. Minegar is to be sentenced by this Court pursuant to his guilty plea to Count 1: Transportation of Child Pornography under 18 U.S.C. §§ 2252A(a)(1) and 2252A(a)(1). Mr. Minegar entered his guilty plea pursuant to a Rule 11 Agreement. The Probation Department calculated Mr. Minegar's sentence to be 121 to 151 months. However, in considering the 18 U.S.C. § 3553(a)(1) factors, this Court should grant him a downward department from this guideline range and sentence him to the mandatory minimum of 60 months of incarceration.

## II.    ARGUMENT

1

A. **18 USC § 3555(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Section 3553(a)(1) requires this Court to consider the history and characteristics of Mr. Minegar as a relevant factor when making sentencing determinations.  The policy rationale underlying this subsection is that the guidelines do not evaluate the defendant's personal characteristics when determining a range. *Rita v. United States*, 551 U.S. 338, 357; 127 S. Ct. 2456, 2461 (2007).

## Nature and Circumstances of the Offense

Mr. Minegar has pleaded guilty to Count 1: Transportation of Child Pornography.  The offense conduct underlying the guilty plea involved Mr. Minegar traveling from Tokyo, Japan to Detroit, Michigan with 80 images and 28 videos of child sexually abusive material.

## Personal History and Characteristics of Tyler Scott Minegar

Tyler Scott Minegar is twenty-nine years old.  This offense is Mr. Minegar's first criminal offense which emphasizes that he has the ability to learn from the poor decisions he made in this case and prevent them from ever resurfacing in the future.  He has faced immense difficulties in his life, and he has made mistakes.  However, he does not want his past to hold him back and he is adamant about making changes and doing better.  Given Mr. Minegar's life experiences and the fact that he has no criminal history, Defense is requesting a sentence that is at the mandatory minimum of 60 months.  A sentence of 60 months for this offense would be appropriately harsh, and the lack of aggravating factors further supports this position.

Childhood & Teen Years

2

Tyler Minegar was born in New Brunswick, New Jersey, on April 15, 1996.  Tyler has two younger brothers, Mason who is 22 and Riley who is 17.  His mother, Nicole Minegar, passed away in 2015 from liver disease.  Mrs. Minegar was a long-time opiate addict and used heroin throughout her pregnancy with Tyler.  Her struggles with addiction led to Mr. and Mrs. Minegar's divorce, but the family remained in one home for the sake of keeping the family together.

While Mr. Scott Minegar, Tyler's father, did his best to support his wife maintaining sobriety, there were still several traumatic instances that Tyler was unfortunately a witness to. Throughout his childhood, Mrs. Minegar would show up to his school under the influence of drugs causing the school to call CPS.  At one point, Tyler found a needle used to inject heroin which led to conflicts between his parents.  Even though Tyler can recall his mother having times of sobriety, he can also recall submitting urinalysis tests on her behalf so that Mrs. Minegar could avoid conflicts with Mr. Minegar.

Tyler was also a boy scout through Boy Scouts of America.  Unfortunately, when he was only 10 years old, he was sexual abused by three different male Boy Scouts of America counselors until he was approximately 16 years old.  Mr. Minegar, Tyler's father, was proud of Tyler's achievements in the boy scouts and so Tyler did not report the abuse until much later.  Due to his prior abuse, Tyler joined in a class action lawsuit against Boy Scouts of America for his sexual abuse claims.  Tyler has long struggled with the effects of this abuse and is hoping to seek closure and resolution in seeking legal retribution.

Outside of his unfortunate trauma, Tyler still performed well in school as a child.  He was a quality baseball player, a very good wrestler, an award-winning rifle precision shooter, and an Eagle Scout.  Despite being faced with many challenges and personal struggles, Tyler still maintained a good character and effort in his endeavors.  Tyler's ability to maintain his work ethic

and determination despite these challenges demonstrates his ability to mature and grow despite any missteps or drawbacks.  Tyler did face further struggles when he became involved in substance misuse as a teenager.

Substance Misuse

Mr. Minegar's mother's opiate addiction as well as his sexual trauma had major effects on his development.  Beginning at the age of 10, Mr. Minegar first tried alcohol and his use increased to three to four whiskey drinks every day leading up to the date of the incident.  Mr. Minegar first used marijuana at the age of 12 and had increased to daily use up until the date of the incident.  Mr. Minegar has also regularly engaged in cocaine and methamphetamine use, though he ceased any use of methamphetamine in 2020.  Mr. Minegar had particularly challenging addiction issues with Adderall, which he was prescribed for ADHD, which lead to abuse of his prescription.

Mr. Minegar's struggles with substance misuse have not been met with ignorance or avoidance.   In fact, Mr. Minegar has made several attempts at rehabilitation; however, they were unsuccessful.  His drug screening assessment revealed that Mr. Minegar has a severe substance use disorder.  Despite this, Mr. Minegar has still indicated an interest in receiving individual or group substance treatment.

Education & Employment

On June 20, 2014, Mr. Minegar received his high school diploma from Manville High School in Manville, New Jersey.  While in high school, Mr. Minegar completed the New Jersey State Police Youth Trooper Academy with aspirations of going into law enforcement.  Further, Mr. Minegar had enrolled in college courses but was unable to complete the credits because of his mother's passing away and his struggles with substance misuse.

Since being incarcerated, Mr. Minegar has sought out educational resources.  He has completed several online courses through EDOVO, an online non-profit organization that provides education, vocational, and rehabilitative resources to incarcerated individuals.  Mr. Minegar has completed 35 hours of courses as well as 30 additional hours of supplemental learning.  Mr. Minegar intends to put in as much time as he can into education during his period of incarceration.

Prior to incarceration, Mr. Minegar had been working for several months as a contracted employee with the Internal Revenue Service (IRS) as a data analyst.  Mr. Minegar has also been employed at CX360 Centene as well as Intrado.  Mr. Minegar is skilled in data analysis and business administration as well as real estate.  Mr. Minegar's release plan following any period of incarceration is to work in real estate and reside with his wife.  The support of his family has made an immense difference in Mr. Minegar's ability to overcome challenges and his potential to grow from past mistakes.

Relationships

Today, Mr. Minegar has the support of his father, his brothers, and his wife.  Mr. Minegar has a strong relationship with his dad as well as his wife, Paula Carvajal.  Mr. Minegar and Ms. Carvajal were married on August 19, 2019, and the two share a condominium in Miami Beach, Florida.  Following his release from incarceration, Mr. Minegar intends to reside with his wife in Miami Beach, Florida, but his father would also welcome him back to his home in Manville, New Jersey.  Mr. Minegar feels fortunate to have the support and love of his family.

Looking Forward

Mr. Minegar knows that he has made poor choices, but he wants to do better.  He believes people make mistakes and that they can learn from them.  Mr. Minegar regrets his actions and, in

particular, he regrets any actions he took that hurt any children.  Given the fact that Mr. Minegar has zero criminal history and has proven his ability to overcome challenges, he has shown his potential to learn from his past mistakes and grow as a functional member of society.  There is hope for Mr. Minegar, and he is willing to do the work he needs to make things right.

### B.  18 USC § 3553(a)(2): THE NEED FOR THE SENTENCE IMPOSED.

Mr. Minegar acknowledges the seriousness of his offense.  He had pleaded guilty to Count 1: Transportation of Child Pornography.  Mr. Minegar entered his plea pursuant to a Rule 11 Agreement.  He takes full responsibility for his actions that led to this case and has shown so by pleading guilty.

### C.  18 USC § 3553(a)(3): THE KINDS OF SENTENCES AVAILABLE.

The Probation Department calculated a guideline range of 121-151 months with an offense level of 32.  On June 5, 2025, Mr. Minegar pled guilty to Count 1 of the Indictment pursuant to a Rule 11 Plea Agreement.  The Government extended the plea offer and recommended that the sentence of imprisonment does not exceed 121 months.  Further, the mandatory minimum for this offense is 60 months.

However, despite the Probation Department's calculations, Mr. Minegar's base offense level should be 30, not 32 as the Probation Department calculated.  With a criminal history of I, this brings Mr. Minegar's guideline range to 97-121 months of incarceration.  Defense is asking for a sentence to the mandatory minimum of 60 months of incarceration, or a sentence below or at the bottom of Mr. Minegar's sentencing guidelines.

The two-level enhancement for the use of a computer under U.S.S.G. § 2G2.2(b)(6) should not be applied in this case because this guideline no longer serves its intended purpose of

6

distinguishing among offenders and would result in a sentence greater than necessary under 18 U.S.C. § 3553(a).

Although the enhancement is written in mandatory language, the Supreme Court and the Sixth Circuit have made clear that the Guidelines are advisory, and district courts retain discretion to vary from them based on policy disagreements or where a guideline fails to meaningfully reflect culpability. *Kimbrough v United States*, 552 U.S. 85, 109-10 (2007); *United States v Klepper*, 520 F. Appx. 392, 393 (6th Cir. 2013).

As the court recognized in *United States v. Marshall*, the computer-use enhancement no longer functions as a true aggravating factor because it applies in virtually every modern child pornography case.  870 F.Supp.2d 489 (N.D. Ohio 2012).  When the enhancement was first adopted, it applied to a minority of offenders; today, nearly all non-production child pornography offenses necessarily involve a computer.  As a result, "the enhancement is, for all intents and purposes, part-and-parcel of the offense." *Id.* at 494.  Rather than distinguishing more culpable conduct, it artificially inflates offense levels across the board.

This failure to differentiate offenders undermines one of the central purposes of the Guidelines: proportionality.  Enhancements are meant to identify conduct that makes an offense more serious or a defendant more dangerous.  Yet there is no empirical evidence that receiving or viewing images via a computer is more culpable than receiving the same material through another medium.  *Marshall*, 870 F.Supp.2d at 494-495; see also *United States v. Grober*, 595 F.Supp.2d 382, 397-98 (D.N.J. 2008).  Because the enhancement applies almost universally, it does not meaningfully separate defendants who pose a heightened risk to the public from those who do not.

7

Applying § 2G2.2(b)(6) in this case would therefore produce a Guidelines range that overstates the seriousness of the offense and the defendant's individual culpability. As *Marshall* explains, the cumulative effect of broadly applicable enhancements, including computer use, often results in advisory ranges that approach or exceed sentences imposed for hands-on sexual abuse, even where there is no evidence of production, distribution for profit, or contact with a minor. 870 F.Supp.2d at 492-493; *see also United States v. Dorvee*, 616 F.3d 174, 187 (2d Cir. 2010).

Such a result conflicts with § 3553(a) and its directive that a sentence be "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a). When enhancements operate mechanically and without empirical grounding, they risk producing sentences that are untethered from the defendant's actual conduct. *Marshall*, 870 F.Supp.2d at 494-95.

Declining to apply the computer-use enhancement does not minimize the seriousness of the offense. Rather, an enhancement would accurately reflect an individualized assessment of what the defendant actually did, consistent with *Gall v United States*, 552 U.S. 38, 50 (2007). As numerous courts have recognized, downward variances in child pornography cases are frequently warranted not because a defendant's conduct is atypical, but because § 2G2.2 itself is unduly harsh and fails to meaningfully distinguish among levels of culpability. *Grober*, 595 F.Supp.2d at 398; *Marshall*, 870 F.Supp.2d at 491-92.

Accordingly, the Court should exercise its discretion to decline application of § 2G2.2(b)(6) and impose a sentence grounded in the statutory factors of § 3553(a), rather than an enhancement that has become inherent in the offense and no longer serves a valid sentencing purpose. Considering all of Mr. Minegar's life experiences and the mitigating factors in this case,

a sentence at the mandatory minimum of 60 months would be a sufficient punishment that fits this crime.

### III. CONCLUSION

Mr. Minegar understands the wrongfulness of his actions. Accordingly, he appreciates the need for a sentence that reflects the seriousness of his offense, promotes respect for the law, and provides just punishment for his conduct. 18 U.S.C. § 3553(a)(2). He asks that this Court consider the factors presented above as sufficient to support Defense's request to be sentenced at the mandatory minimum.

WHEREFORE, the Defendant, TYLER MINEGAR, requests this Honorable Court grant him a downward departure from his guideline range and sentence him to the mandatory minimum of 60 months of incarceration or at the bottom of his sentencing guidelines.

Respectfully submitted,

Dated: March 26, 2026

*/s/ Gabi D. Silver*
GABI D. SILVER
Attorney for Defendant
1300 Broadway, Suite 500
Detroit, MI 48226
(313) 963-0210

9

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

     Plaintiff,

                                                 Case No. 24-cr-20493

v                                                Hon. Matthew F. Leitman

TYLER SCOTT MINEGAR,

     Defendant.

_____/

| | |
|---|---|
| SEAN L. KING | GABI D. SILVER (P36382) |
| Assistant United States Attorney | Attorney for Defendant |
| 211 W. Fort Street | 1300 Broadway, Suite 500 |
| Suite 2001 | Detroit, MI 48226 |
| Detroit, MI 48226 | (313) 963-0210 |

---

CERTIFICATE OF SERVICE

Attorney, Gabi D. Silver, affirms, deposes and states that on March 26, 2026, she did cause to be served electronically with the Clerk of the United States District Court, Eastern District, using the ECF system which will send notification of Defendant's Sentencing Memorandum filing to the following:

1. Honorable Matthew F. Leitman
2. Sean L. King, Assistant U.S. Attorney

                                        Respectfully submitted,

                                        */s/ Gabi D. Silver*

Dated: March 26, 2026                     GABI D. SILVER
                                         Attorney for Defendant
                                         1300 Broadway, Suite 500
                                         Detroit, MI 48226
                                         (313) 963-0210